IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MELVIN DAVIS,                              )
                                           )
        Petitioner,                        )
                                           )
v.                                         )    CASE NO. 2:10-CV-262-WKW
                                           )              [WO]
JEFFERSON DUNN, *Commissioner*,            )
*Alabama Department of Corrections*,       )
                                           )
        Respondent.                        )

## MEMORANDUM OPINION AND ORDER

Before the court is the "Motion for Relief from Order and to Alter, Amend, or Vacate Judgment" filed by Petitioner, Melvin Davis ("Davis"), on February 25, 2026. (Doc. # 67.) In a Memorandum Opinion and Order entered on January 28, 2026, Davis's 28 U.S.C. § 2254 habeas petition was denied, and a Final Judgment dismissing Davis's case and denying a Certificate of Appealability ("COA") was entered. (Docs. # 65, 66.) Davis now moves to alter, amend, or vacate that judgment pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and grant the relief sought in the petition. In the alternative, Davis requests a COA permitting him to present all claims—or at a minimum, his ineffective assistance of trial counsel claims—to the Eleventh Circuit Court of Appeals.

Davis raises three arguments in the motion as to why relief should be granted: (1) the memorandum opinion's analysis mistakenly determined that he failed to argue that the cumulative effect of his trial counsel's errors amounted to ineffective assistance of counsel at the guilt phase; (2) the analysis misapplied *Strickland v. Washington*, 466 U.S. 668 (1984), in rejecting his claims that his trial counsel were ineffective in failing to call Sonya Walker and Melinda Clayton as alibi witnesses at the guilt phase, failing to adequately cross-examine State witness Eugene Smith at the guilt phase, and failing to adequately prepare for the penalty phase; and (3) manifest error occurred in the denial of a COA on any of his claims. Respondent, Jefferson Dunn, the Commissioner of the Alabama Department of Corrections ("Respondent"), filed a brief in opposition to Davis's motion (Doc. # 71), and Davis replied in support of his motion (Doc. # 72). Accordingly, the motion is ripe for review.

For the reasons that follow, Davis is not entitled to relief from the January 28, 2026 judgment denying his federal habeas petition.

## I.     BACKGROUND

The facts and circumstances of Davis's capital offenses and the procedural history of this case, in both the state courts and this court, are set forth in detail in the Memorandum Opinion and Order entered January 28, 2026. (Doc. # 65.) Briefly, Davis was convicted and sentenced to death in 1998 for the execution-

2

style murders of two men, and the attempted murder of a third, during a first-degree burglary.  Davis's intended target, who was not at home when the murders occurred, was an informant in a then-pending drug distribution case against Davis and his brother.  Davis's convictions and sentence were upheld on appeal.

Thereafter, Davis petitioned the Alabama courts for post-conviction relief pursuant to Alabama Rule of Civil Procedure 32, raising numerous constitutional claims, including ineffective assistance of counsel at all stages of his trial and appeal.  After an evidentiary hearing during which 19 lay and expert witnesses were called to testify relative to Davis's ineffective assistance of counsel claims, the state trial court, and later the appellate courts, denied all of Davis's claims.

Davis's federal habeas petition raised approximately 80 claims for relief. Each claim was addressed in the January 28, 2026 Memorandum Opinion and Order.   The majority of the claims were procedurally barred due to Davis's failure to exhaust the claims in the state courts or the state courts' dismissal of the claims on state procedural grounds.  The remaining claims were denied because the state courts had previously addressed and denied them on their merits, and those decisions were reasonable under 28 U.S.C. § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Case 2:10-cv-00262-WKW-JTA   Document 74   Filed 05/19/26   Page 4 of 23

## II.   STANDARDS OF REVIEW

### A.   <u>Rule 59(e)</u>

Rule 59 addresses motions for new trials and motions to alter or amend judgments. Fed. R. Civ. P. 59.  Regarding motions to alter or amend judgments, subsection (e) of Rule 59 merely states that such motions must be filed within 28 days after the entry of the judgment being challenged.  Fed. R. Civ. P. 59(e).  The text of Rule 59(e) does not state the appropriate grounds on which a motion to alter or amend a judgment may be granted.  *See id.*

However, the Supreme Court has cautioned that a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (quoting 11 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)).  The Eleventh Circuit has repeatedly issued the same warning to litigants.  *See, e.g., U.S. EEOC v. St. Joseph's Hosp. Inc.*, 842 F.3d 1333, 1349 (11th Cir. 2016) ("A Rule 59(e) motion is not a chance for a party to correct poor strategic choices, nor are such motions to be used by litigants to cry over spilled milk.") (quoting *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 77 (D.D.C. 2013)); *Am. Home Assur. Co. v. Glenn Estess & Assoc., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (allowing

4

an unsuccessful litigant to raise a new argument in a Rule 59(e) motion would improperly afford him "two bites at the apple").

Instead, the Eleventh Circuit has held that the *only* grounds for granting a Rule 59(e) motion are "newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)). Because Davis's motion is not based on newly-discovered evidence, the only basis for granting it would be a manifest error of law or fact. A "manifest error" is not just any error but one "that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Error*, Black's Law Dictionary (10th ed. 2014). Thus, Rule 59(e) provides an extraordinary remedy to litigants that courts use sparingly. *See Arthur*, 500 F.3d at 1343.

**B.     Rule 60(b)**

Rule 60(b) motions may relieve a party from a judgment due to:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly-discovered evidence that could not have been discovered earlier with due diligence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) a void judgment; (5) a judgment that has been satisfied, released, discharged, reversed, or vacated; or (6) any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b).  Davis states that he brings this motion pursuant to the final

provision, subsection (6).   (*See* Doc. # 67 at 9.)   Even in ordinary civil cases, "relief under [Rule 60(b)(6)] is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances."   *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984).

However, this case is governed by the AEDPA, and in *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court noted that the AEDPA forecloses application of Rule 60(b) where it would be inconsistent with the restrictions imposed on second or successive habeas petitions by the AEDPA.   *Id.* at 529–30. Thus, the Court in *Gonzalez* held that when a habeas petitioner files a Rule 60(b) motion that actually "advances one or more 'claims'" then the Rule 60(b) motion is the equivalent of a second or successive habeas petition under 28 U.S.C. § 2244(b), and the federal district court must dismiss it unless the petitioner has received authorization from the appropriate court of appeals for consideration of the motion. *Id.* at 528–32.   The Court explained that a Rule 60(b) motion actually advances a "claim" when it seeks to add a new ground for relief or when it "attacks the federal court's previous resolution of a claim *on the merits*, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief."   *Id.* at 532 (internal footnote omitted).   The Court stated, however, that when the Rule 60(b) motion "attacks, not the substance of the federal

6

court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," the motion is not a successive habeas petition. *Id*. The Court further clarified what it meant by "on the merits":

> The term "on the merits" has multiple usages. We refer here to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d). When a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim. He is not doing so when he merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.

*Id*. at 532 n.4 (citation omitted). Thus, as explained by the Eleventh Circuit, "[w]hen a Rule 60(b) motion qualifies as a second or successive habeas petition as defined in *Gonzalez*, it must comply with the requirements for such petitions under the AEDPA." *Williams v. Chatman*, 510 F.3d 1290, 1294 (11th Cir. 2007) (citing 28 U.S.C. § 2244). Those requirements include authorization from the court of appeals, and without it, the district court lacks subject matter jurisdiction to consider the Rule 60(b) motion, and the motion must be dismissed. *Id*. at 1294–95.

In his motion, Davis argues that the law was misapplied to his constitutional claims when his habeas petition was denied. Thus, Davis contends that the denial of habeas relief "on the merits" was erroneous. However, the denial renders his motion a successive habeas petition as defined in *Gonzalez*. *See* 545 U.S. at 532. Davis did not receive authorization from the Eleventh Circuit for this court to

7

consider the motion; therefore, subject matter jurisdiction is lacking to consider

Davis's challenge to the judgment insofar as he raises that challenge through Rule

60(b)(6).  *See* 28 U.S.C. § 2244(b)(1); *see also Williams*, 510 F.3d at 1294–95.[1]

Accordingly, whether Davis is due relief from the judgment must be

examined pursuant to the standards espoused in Rule 59(e) rather than Rule

60(b)(6).

### III.   ANALYSIS

### A.   <u>Guilt-Phase Ineffective Assistance of Trial Counsel</u>

#### 1.   *Cumulative effect of deficient performance*

Davis's first contention is that this Court manifestly erred in concluding in a

footnote that he did not argue that the cumulative effect of his trial counsel's errors

during the guilt phase of his trial prejudiced him.  (*See* Mem. Op., Doc. # 65 at 122

n.10 ("Davis does not make the argument that the cumulative effect of his trial

counsel's alleged guilt-phase errors prejudiced him, so the Court will not consider

that issue.").)  Davis asserts that the "structure and specific language" of his habeas

petition and merits brief should have made it clear that his "overarching" argument

was that all of trial counsel's guilt-phase failures, taken together, amounted to

constitutionally deficient performance that prejudiced him.  (Doc. # 67 at 10.)

---

[1]  Davis asserts that one of his grounds for relief—that the denial of a COA was erroneous—is not a challenge to the denial of habeas relief "on the merits," but Davis cites no authority for that proposition.  (*See* Doc. # 72 at 22–23.)  In any event, Davis contends that, even if this court determines it lacks jurisdiction under Rule 60(b), jurisdiction under Rule 59(e) is proper.  (*See id*.)

Thus, Davis argues that the judgment should be altered, amended, or vacated for consideration of the cumulative effect of his trial counsel's errors and that ultimately relief should be granted on his guilt-phase ineffective assistance of counsel claim.

If Davis raised this argument at all, he did not "fairly present" it in this federal habeas proceeding. *See Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1352 (11th Cir. 2009). The Eleventh Circuit has described a petitioner's duty to suitably frame an issue for judicial review:

> The district court did not consider that argument because it was not fairly presented. Only one sentence in Smith's 116-page petition for a writ of habeas mentioned the possibility of inter-claim cumulative analysis and no authority was cited for it. Smith did not even allude to the argument in his combined 123-page memoranda of law in support of his petition. That is not adequate presentation of the issue. *See United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006) (an issue was not adequately presented unless it was raised in a way that the district court could not misunderstand it); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *cf. Flanigan's Enters. Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that an argument was waived because the appellants "fail[ed] to elaborate or provide any citation of authority in support of" the argument in their brief). Because the issue or argument was not properly presented to the district court, we will not decide it. *See Johnson v. United States*, 340 F.3d 1219, 1228 n.8 (11th Cir. 2003) ("Arguments not raised in the district court are waived.") . . . .

*Smith*, 572 F.3d at 1352.

Davis alleged that his trial counsel were ineffective during the guilt phase of his trial as Claim "A" in his habeas petition. (Doc. # 1 at 18–30.) Claim A

9

comprised 41 paragraphs and was further subdivided into six subclaims, each setting forth different instances where Davis says his counsel erred during the guilt phase.  Davis did not raise a cumulative effect argument as a separate claim or subclaim within Claim A.  He did not even use the phrase "cumulative effect" within Claim A.

It is ironic that Davis now protests that the *structure* of his petition presented a guilt-phase cumulative effect argument because Davis *did* allege that the cumulative effect of his trial counsel's *penalty-phase* errors prejudiced him.  In Claim "B," Davis alleged that his trial counsel were ineffective during the penalty phase.  (Doc. # 1 at 31–44.)  Claim B also comprised 41 paragraphs and was further subdivided into five subclaims, each setting forth different instances where Davis says his counsel erred during the penalty phase.  In the final paragraph of the fifth subclaim of penalty-phase error, Davis alleged that "[t]he cumulative effect of trial counsel's numerous failure[s] rendered their assistance to Davis ineffective." (*Id.* at 44).  That sentence was interpreted as pertaining to Davis's penalty-phase allegations, and, thus, the cumulative effect of the alleged penalty-phase errors was addressed in the memorandum opinion.  (*See* Doc. # 65 at 155–56.)  If Davis had made a similar argument with respect to the guilt phase, that argument would have been addressed.  However, the fact that Davis included the cumulative effect argument within Claim B suggests that its absence within Claim A was intentional.

10

Nonetheless, Davis now lifts three statements from his 73-page habeas petition, arguing that they show that he raised a claim that the cumulative effect of his trial counsel's guilt-phase errors prejudiced him.  They are as follows:

> Doc. # 1 at 18 ¶ 34:  "The performance of Davis'[s] counsel was 'deficient' and fell below 'an objective standard of reasonableness' and this deficient performance ultimately prejudiced the defense.' *Strickland*, 466 U.S. at 687–88."

> *Id.* at 24 ¶ 56: "Had trial counsel taken the opportunity to submit the State's case to a rigorous challenge—as Davis deserved—the jury would have received numerous facts that each, **and certainly when taken together**, establish a reasonable doubt as to Davis'[s] guilt. But for this deficient performance, there exists a substantial likelihood that the jury's verdict may have been different.  Davis is entitled to habeas relief on his ineffective assistance of counsel claims." [emphasis added by Davis in his Rule 59 motion]

> *Id.* at 72 ¶ 215:  "The **cumulative effect** of the inadequate compensation of trial and appellate counsel, and trial and appellate counsel's deficient performance during every phase of Davis'[s] trial and appeal, denied Davis adequate representation as guaranteed under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution." [emphasis added by Davis in his Rule 59 motion]

(Doc. # 67 at 10–11.)  However, these statements must be considered in context. The first statement, although placed near the beginning of Claim A, is merely a quote from *Strickland* and provides the legal standard for ineffective assistance of counsel claims.  It is wholly unclear how this statement evidences a cumulative effect argument.

While the second series of statements mentions that certain facts should have been analyzed *together*, those statements were not framed in a manner that

conveyed a reference to Petitioner's entire guilt-phase ineffective assistance of counsel claim. This is because this series of statements was contained within only one of the six guilt-phase ineffective assistance of trial counsel subclaims—the third subclaim, which alleged that Davis's trial counsel failed to conduct an independent investigation of the facts or to investigate alternative theories of the crime. (*See* Doc. # 1 at 47–56.) Within this third subclaim, Davis raised even more separate and unrelated allegations. For instance, Davis alleged that his counsel should have investigated alternative theories of how the crimes occurred instead of merely accepting the investigation of law enforcement; that they should have investigated other suspects, including Jerome Henderson, John McClenney, Steve McLemore, and Damon Washington, and other witnesses, including Yulonda Belser and Kaneshia Taylor; that they should have challenged the admissibility of his statement upon arrest as violative of *Miranda v. Arizona*, 384 U.S. 436 (1966); and that they should have objected when two State witnesses testified at trial that they did not have deals with the State to reduce their sentences in exchange for their testimony. Each of these allegations were separately addressed in the memorandum opinion. Although Davis made a passing reference to the cumulative effect of certain facts within the third out of six subclaims, this reference was not developed enough to establish a separate cumulative effect claim.

Admittedly, the third statement plainly argues that the cumulative effect of *all* alleged errors by trial and appellate counsel should be considered in determining whether Davis was prejudiced. However, this statement made up the final paragraph of Davis's claim that his *appellate* counsel rendered ineffective assistance on direct appeal (Claim X), not that his trial counsel rendered ineffective assistance during his trial (Claims A and B). In other words, this statement does not appear in the section of the petition addressing the guilt-phase ineffective assistance of counsel claim; it appears 30 pages later in the petition. It is not a court's responsibility to assume arguments that a litigant has failed to clearly articulate.

As for his merits brief, Davis now sets forth four statements in which he claims that he "explicitly" argued that the cumulative effect of his trial counsel's guilt-phase errors prejudiced him. They are:

> Doc. # 25 at 27: "[T]here is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different."
>
> *Id.* at 31: "Had trial counsel submitted the State's case to a rigorous challenge, as Davis deserved, the jury would have received numerous facts that together would have established a reasonable doubt as to Davis'[s] guilt."
>
> *Id.* at 34: "These numerous failures of trial counsel to present crucial evidence prejudiced Davis'[s] defense."
>
> *Id.*: "Trial counsel's conduct at the guilt/innocent stage of Davis'[s] trial was deficient and fell below an objective standard of

reasonableness . . .  The record shows that exculpatory evidence was bountiful and readily available to trial counsel, but because of their ineptitude, indifference, and lack of preparation, they did not provide Davis with a competent defense.  This deficient performance ultimately prejudiced Davis'[s] defense."

(Doc. # 67 at 11–12.)  Again, when considered in context, these statements did not fairly present the claim.  The first statement is a quote from *Strickland*.  The remaining statements, while alluding to "numerous" failures of trial counsel, provided no further elaboration nor citation to authority in support of a cumulative effect argument.

In his reply brief, Davis argues that even if he did not raise the issue, it should have been addressed *sua sponte* because *Strickland* instructs courts when assessing prejudice to consider "the totality of the evidence before the judge or jury."  466 U.S. at 695.  Davis argues that the prejudice inquiry is "inherently cumulative," citing two Eleventh Circuit cases in support:  *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1055 (11th Cir. 2022) (en banc) ("Even if the state court's prejudice determination as to each ground of allegedly deficient performance was reasonable, we must still decide whether its conclusion as to the cumulative prejudice constituted an unreasonable application of *Strickland*.  *See Strickland*, 466 U.S. at 694–96, 104 S. Ct. 2052; *United States v. Blakey*, 14 F.3d 1557, 1561 (11th Cir. 1994) (discussing cumulative effect of counsel's errors)."); and *Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1269 (11th Cir. 2012) ("the

14

prejudice inquiry should be a cumulative one as to the effect of all of the failures of counsel that meet the performance deficiency requirement"). (Doc. # 72 at 8.)

However, Davis's argument is misplaced because, having identified no specific instance of deficient performance by his counsel at the guilt phase, Davis cannot invoke a cumulative-prejudice analysis. Indeed, rather than compel the result that Davis was prejudiced by the cumulative effect of his counsel's guilt-phase errors, *Pye* and *Evans* demonstrate that the opposite is true.

The en banc court in *Pye* assumed for the sake of argument that the petitioner had demonstrated multiple instances of deficient performance by his trial counsel and thus focused only on whether the state post-conviction courts' determination that the petitioner was not prejudiced was reasonable under the AEDPA. 50 F.4th at 1033–34. In contrast here, the state post-conviction courts never concluded that Davis's counsel performed deficiently at the guilt phase.

Additionally, when one considers the context of the quoted language from *Evans*, it is clear that Davis's case is not one in which a cumulative effect analysis was necessary. The court reasoned in *Evans*:

> One of Evans' arguments is that the district court's analysis of the prejudice issue as to potential witness McCormick was flawed because the court did not consider any prejudice Evans suffered from the failure to call six other potential witnesses. The prejudice inquiry, he insists, must be a cumulative one. It is Evans' argument, not the district court's analysis, that is flawed. While the prejudice inquiry should be a cumulative one as to the effect of all of the failures of counsel that meet the performance deficiency requirement, *only the*

*effect of counsel's actions or inactions that do meet that deficiency requirement are considered in determining prejudice.* Strickland, 466 U.S. at 692, 104 S. Ct. at 2067 ("[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution"); *id*. at 694, 104 S. Ct. at 2068 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (emphasis added). Because Evans has failed to show any deficiency in counsel's performance based on not calling any of the other six witnesses, there is no deficiency to accumulate in order to establish prejudice. *Cf. Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) ("[N]one of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate."). We reject Evans' cumulative prejudice argument.

699 F.3d at 1269 (emphasis added). As in *Evans*, in Davis's case there was "no deficiency to accumulate in order to establish prejudice." *Id.*

In sum, Davis is wrong when he claims that he presented a cumulative effect argument. Thus, no manifest error occurred in failing to address it. Nor was a cumulative effect analysis warranted, given that the state post-conviction courts never found counsel's performance constitutionally deficient.

### 2. Failure to present Sonya Walker and Melinda Clayton as alibi witnesses

Davis next argues that a manifest error occurred in the denial of his claim that his trial counsel were ineffective in failing to present the testimony of Sonya Walker and Melinda Clayton.

Addressing this claim, the court found that the state post-conviction courts' rejection of this claim on the ground that Davis failed to show prejudice was not

16

unreasonable under the AEDPA for several reasons.  The two witnesses' accounts conflicted in some respects, and neither testimony provided an alibi for Davis because neither covered the entire time during which the murders were committed. In addition, the jury likely would have learned through Walker's testimony that Davis sold marijuana, which would have been prejudicial.

Davis now quarrels with each of these reasons, but in so doing, he raises the same arguments that previously were considered and rejected, or he raises arguments that he could have made before the entry of judgment.  Davis fails to show anything beyond his disagreement with the memorandum opinion's conclusion that the state post-conviction courts' decision was reasonable under the AEDPA.  Thus, Davis's arguments will not be reconsidered.  *See Exxon Shipping*, 554 U.S. at 485 n.5.

Davis does raise one argument that he did not previously present.  Relying on the following sentence from the memorandum opinion, Petitioner contends that a manifest error occurred because *Strickland*'s prejudice prong was misstated:

> In sum, Davis has failed to meet his burden to show that the ACCA unreasonably applied clearly established federal law in *Strickland* in holding that he failed to demonstrate **that the outcome of his trial would have been different** but for counsel's failures to interview and call these witnesses.  *See* 28 U.S.C. § 2254(d); *Strickland*, 466 U.S. at 694.

(Doc. # 65 at 78–79) (emphasis added by Davis in his Rule 59(e) motion).  Davis contends that *Strickland* does not require that litigants prove that the outcome of

their trial *would have* been different but for counsel's deficient performance but that it merely requires litigants to show that "*there is a reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (emphasis added).

Davis takes issue with the memorandum opinion's choice of words, but he fails to demonstrate how the AEDPA analysis was flawed. The phrase that Davis now challenges was referring to a litigant's burden to establish *Strickland* prejudice in the first instance. But Davis's burden on federal habeas review, under 28 U.S.C. § 2254(d), was to show that the state courts' previous merits ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). That standard was correctly applied, with an explanation of why the state post-conviction courts reasonably determined—based on the facts before them—that Davis was not prejudiced by his counsel's failure to call these witnesses. As explained in the memorandum opinion, Davis's supposed alibi witnesses and their proffered testimony would not have affected Davis's convictions or death sentence. The analysis considered the inconsistencies between the witnesses' accounts, gaps in the timeline coverage, and the potentially harmful effects of the testimony. In

18

light of those deficiencies, the state courts' determination that Davis failed to show a reasonable probability of a different outcome was reasonable.

Accordingly, Davis has not shown that a manifest error occurred in the analysis under *Strickland* and the AEDPA.

### 3. Failure to cross-examine State witness Eugene Smith

Davis also argues that a manifest error occurred in the denial of his claim that his trial counsel were ineffective in failing to cross-examine State witness Eugene Smith about the fact that the day before trial, he identified two individuals other than Davis as the shooter.

In the memorandum opinion, the state post-conviction courts' decision that Davis did not establish deficient performance nor prejudice was found to be reasonable under the AEDPA and supported by the record for several reasons. It was noted that Davis's counsel *did* cross-examine Smith on various issues; that the jury already knew from other trial testimony that Smith was not credible; that Smith "gave numerous names of suspects and would give police the names of people from newspapers and television as possible suspects" and "changed his story several times and seemed confused"; and that the topics about which Davis argued that counsel should have cross-examined Smith were not sufficiently exculpatory such that they would have changed the outcome of Davis's trial. (Doc. # 65 at 108.)

19

Davis quarrels with the final reason, asserting that the memorandum opinion's analysis ignored the impact Smith's testimony regarding the identity of the shooter would have had on the jury. In making this argument, Davis rehashes arguments that he did, or could have, presented before the judgment, so the Court will not consider them further. *See Exxon Shipping*, 554 U.S. at 485 n.5.

Davis also argues that the analysis misapplied *Fugate v. Head*, 261 F.3d 1206 (11th Cir. 2001), in denying this claim, and that *Nixon v. Newsome*, 888 F.2d 112 (11th Cir. 1989), compels the conclusion that his trial counsel's failure to cross-examine Smith was both deficient performance and prejudicial. In the memorandum opinion, it was noted that the Eleventh Circuit in *Fugate* held, "Absent a showing of 'a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial,' the petitioner is unable to show prejudice necessary to satisfy the second prong of *Strickland*." (Doc. # 65 at 111 (quoting *Fugate*, 261 F.3d at 1219)). Davis argues that he *did* identify a "single specific instance" where cross-examination would have changed the outcome of his trial—cross-examining Smith regarding his identification of other suspects. However, the same argument was previously considered and rejected, and it will not be revisited. *See Exxon Shipping*, 554 U.S. at 485 n.5.

*Nixon* was not discussed in the memorandum opinion, but the Eleventh Circuit cited it in *Fugate* as a case in which the court had found ineffectiveness where counsel failed to impeach the key prosecution witness with prior inconsistent testimony where the earlier testimony was more favorable to the defendant. *See Fugate*, 261 F.3d at 1219. *Nixon* is not clearly established Federal law as determined by the Supreme Court, *see* 28 U.S.C. § 2254(d), so the court's failure to liken Davis's case to *Nixon* was not a manifest error of law. In any event, *Nixon* is factually distinguishable because it concerned glaring discrepancies in the testimony of the murder's sole eyewitness. *See* 888 F.2d at 113–14. Davis is due no relief with regard to the memorandum opinion's treatment, or lack thereof, of these cases.

## B.     Penalty-Phase Ineffective Assistance of Counsel

Davis argues that a manifest error occurred in the rejection of his claim that his trial counsel were ineffective at the penalty phase of his trial by failing to prepare; failing to call their expert witness, Dr. Freeman, to testify; and failing to conduct any investigation into his background or social history, which Davis claims would have revealed that he grew up in a violence-ridden, poor community and witnessed domestic abuse in his home and yet was a mentor, father-figure, and positive influence on many. Davis contends the Supreme Court's opinions in *Porter v. McCollum*, 558 U.S. 30 (2009), and *Wiggins v. Smith*, 539 U.S. 510

21

(2003), were misapplied in denying this claim. However, those decisions were previously reviewed and found not to support Davis's claims because they involved materially different facts and mitigating circumstances. (Doc. # 65 at 136–41.) That conclusion is adhered to here. Evaluating prejudice under *Strickland* "involves a case-by-case inquiry—simply because prejudice was found after considering similar omitted mitigating evidence in one case is not dispositive of whether prejudice necessarily exists in another." *Gavin v. Comm'r, Ala. Dep't of Corr.*, 40 F.4th 1247, 1269 (11th Cir. 2022).

Davis's other arguments with regard to this claim merely reassert how his defense counsel was ineffective. Because he is re-raising arguments that have been considered and rejected, Davis has failed to demonstrate that a manifest error occurred. *See Exxon Shipping*, 554 U.S. at 485 n.5.

## C.   <u>COA</u>

Davis's final argument is that, even if the substance of the ineffective assistance of trial counsel claims is not revisited, reconsideration should be given to the denial of a certificate of appealability as to all claims—or, at minimum, as to the ineffective assistance of trial counsel claims. Reconsideration is not warranted because Davis has not made a substantial showing that he was denied the constitutional right to the effective assistance of counsel or demonstrated that reasonable jurists could debate whether his petition should have been granted. *See*

28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  A COA was correctly declined.

### III.   CONCLUSION

For the foregoing reasons, it is ORDERED that Davis's "Motion for Relief from Order and to Alter, Amend, or Vacate Judgment" (Doc. # 67) is DENIED.

DONE this 19th day of May, 2026.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE
